Johnson, C. J. The writ issued in this case commands William W. Floyd to appear before this court, and to show by what warrant and authority he holds and exercises the QÍIice and franchise of judge of the fourth judicial circuit in this látate; and then avers that, by an amendment to the constitution and the act passed in pursuance thereof, the judicial circuit for which he was elected judge has been abolished, and that, by such abolishment of the circuit, he had ceased to be one of the circuit judges of the State of Arkansas. The defendant appeared in obedience to the mandate of the writ, and filed his response. He alleges, by way of response, that he was elected judge of the seventh judicial circuit of said State, by the General Assembly, on the 30th November, A. D. 1846, for the term of four years from the date of his commission, and that he was duly commissioned, by the governor of said State, as such judge, on the day of his election ; that, by an act passed on the same day of his election, it was declared, the counties of Crawford, Franklin, Johnson, Pope, Scott, Yell and Conway, should constitute the seventh circuit; that, by an act of 29th of December, 1848, entitled “An act to divide the State into judicial circuits,” &c., it was declared that the counties of Scott, Crawford, Franklin, Johnson, Carroll, Newton, Madison, Washington and Benton, should constitute the fourth circuit, and that the judge of the seventh circuit should be judge of the fourth circuit. He further stated that a majority of the counties which composed the seventh circuit, including Johnson county, the county of his residence, were, by the act aforesaid, put into the circuit called the fourth by said act; that, at the time of the passage of said act, the circuit called the fourth, under the previous arrangement of the circvts, had no judge; that Judge Sneed had vacated his office by removal to Texas, and that his constitutional term had actually expired, and that the General Assembly had re-arranged the circuits with a full knowledge of the vacancy, as was shown upon the face of the act of the 29th of December, 1848. Upon this state of facts ho insists that his office, as judge of the seventh circuit, has not been abolished, as suggested by the writ; but that a change has merely been made in the number and territorial boundaries of his circuit; by which change the Legislature did notydesign to abolish his office, nor was such the effect of the change. He therefore submits that, by virtue of his election, and commission, and by virtue of the constitution of the State, and the act of 29th of December, 1848, he rightfully exercises the office of judge of the fourth judicial circuit of this State, and prays to be discharged, &c. To this response, the Attorney General interposed a demurrer : the legal effect of which is to admit the facts, but to deny their sufficiency in point of law. The only question really involved in this case relates to the constitutionality of the act of the 29lh of December, 1848, so far as it operates upon the seventh circuit. It is conceded, by the demurrer, that the defendaut was elected to the judgeship of the seventh judicial circuit of this State, by the General Assembly, on the 30th of November, 1846, for the term of four years from the date of his commission, and that he was duly commissioned, as such judge, on- the day of his election, by the governor of the State. In order to a full solution of this question, it will be necessary to refer to the constitution as it existed at the date of the defendant’s election, and also to such changes as have been subsequently made in that instrument. The sixth article of the constitution declares that “the judicial power of this State shall be vested in one supreme court, in circuit courts, in county courts, and in justices of the peace : ” that “the supreme court shall be composed of three judges, one of whom shall be styled a chief justice, and two of whom shall constitute a quorum, and the concurrence of any two of said judges shall, in every case, be necessary to a decision;” and that “the supreme court, except in cases otherwise directed by the constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State, under such restrictions and regulations as may, from time to time, be prescribed by law: ” that “ the State shall be divided into convenient circuits, each to consist of not less than five nor more than seven counties contiguous to each other, for each of which a judge shall be elected, who, during his continuance in office, shall reside and be a conservator of the peace within the circuit for which he shall have been elected.” And further, that “the General Assembly shall, by joint vote of both houses, elect the judges of the supreme and circuit couits, a majority of the whole number, in joint vote, being necessary to a choice; ” and that “the judges of the circuit court shall be at least twenty-five years of age, and shall be elected for the term of four years from the date of their commissions.” These are believed to be all the constitutional provisions, bearing upon the question, that were in existence at the date of the election and commission of the defendant. The Legislature, at its last session, whilst in the exercise of their conventional powers, adopted an amendment to the original constitution, by which they repealed that portion of the fourth section of the sixth article which restricted the circuits to not less than five nor more than seven counties. The same body, at the same session, under the authority of this amendment, and in their capacity of legislators, proceeded to re-organize the circuits throughout the entire State, and, in the re-organization, not only parcelled out some of the circuits as they then stood, but actually reduced the number from eight to six. In the act of re-organization an express provision is made that, in case this court shall decide that another amendment of the constitution, by which the power of election is transferred from the Legislature to the people, does not so operate as to oust the judges whose constitutional terms had not expired, that then, and in that case, the judge of the seventh should be the judge of the fourth circuit. The legal effect of that amendment has already been determined by this court in the case of The State vs. William C. Scott. It was there held that the amendment did not, per se, oust the judges, but that they were entitled to hold and execute their respective offices during the constitutional term for which they were elected. The principle settled in that case, admitting that the Legislature did not exceed their constitutional limits in the re-arrangement of the circuits and in transferring the judge of the seventh to the fourth circuit, might be considered as conclusive of the whole question. But herein lies the point to be determined, and it is not without its difficulties. It is apparent that, in case the Legislature possessed no constitutional power to change the name and to destroy the identity of the seventh circuit, that then although the defendant may be nominally acting as judge of the fourth, yet, as it stands admitted by the demurrer that he is still resident in the county of his former residence, and that that, with three others now composing a part of the fourth, constituted a majority of those embraced within the seventh circuit, he, although nominally the judge of the fourth, is not such in reality so acting; but that he, as of right he ought to be, is, and is acting as, the judge of the seventh circuit. I consider the proposition (dear and unquestionable that, in case the circuit judges can be said to have any constitutional rights as applicable to their offices, they are entitled to all such as are secured by that entire instrument as it stood in all its parts at the time of their election and commission. The defendant has an undoubted right to all the guarantees of the constitution as they existed at the date of his commission. What are those guarantees? They are to be found in the following provisions, to wit: “The State shall be divided into convenient circuits, each to consist of not less than five nor more than seven counties contiguous to each other, for each of which a judge shall be elected, who, during his continuance in office, shall reside and be a conservator of the peace within the circuit for which he shall have been elected,” and that “the judge of the circuit court shall be at least twenty-five years of age, and shall be élected for the term of four years from the date of his commission.” He is elected, then, for the term of four years from the date of his commission, and he is expressly required, during his continuance in office, to reside and be a conservator of the peace within the circuit for which he shall have been elected. These provisions, it will be perceived, are clear and imperative, and the judge is just as much bound to reside within the limits of the circuit to which he shall have been elected as the Legislature are to arrange the circuits and elect an incumbent for each. If this proposition be true, and it is too clear to admit of cavil, where is the power in the Legislature, either by modifying or destroying the circuit, to disable the judge from residing within it, and thereby rendering obedience to the positive requirements of the constitution? But it is contended that the Legislature, having created the offices of circuit judge, necessarily possesses the power to destroy them at pleasure. It will be admitted, as a general rule, that the powers of creation and destruction are inseparable; yet this rule must necessarily be subject to certain exceptions, in cases where the power of creation is exercised under constitutional restrictions. For example, the Legislature undoubtedly possesses the power to enact, or, if it be more proper so to speak, create a law, and their power of repeal or destruction is equally clear; yet this, by no means, proves that they, by such repeal, can destroy, or even impair, such constitutional rights as may have been acquired under it. The constitution establishes a circuit court system, and confers upon the legislature the power to divide the State into convenient circuits, and also to elect a judge for each. It may be conceded, and the true doctrine is believed to be, that, by the exercise of this power, the office itself is actually evolved, and put into active operation. But the moment the office is evolved and receives shape and mould, by the hands of the Legislature, all the constitutional guarantees, ipso facto, attach themselves to it; and, for the purposes of the incumbent during the time prescribed, it is just as much a constitutional office as that of the supreme judgship, or any other, created directly by the constitution itself. But here it is objected that to hold thus is to sanction the doctrine of vested rights in a public office. To this I answer, that the rights claimed by the defendant do not arise out of a mere legislative act, but that they result directly from, and are secured to him by, the constitution of the country. A right conferred upon a party by an exercise of legislative power becomes so completely vested as not to be susceptible of divesture by mere legislative authority, and, for a much stronger reason, would it not be when secured by the organic law itself. The doctrine of vested rights is not relied upon to sustain the position taken by the defendant, nor could it be, unless it should go to the extent to deny the power of the people in convention to oust him from his office. This is not pretended; but, on the contrary, such power is fully conceded. But, to illustrate this principle more clearly, let us suppose that the Legislature, after having fixed a judge’s salary, should attempt to abolish, or even to diminish it during his constitutional term or office. Such an act would be admitted by all to be a clear and palpable violation of the constitution, and consequently void. The question then arises here, in what respect is the amount of his salary, when fixed by the Legislature, more firmly secured than his territorial limits and the identity oí his circuit? The salary cannot be said to have been created by the constitution, but is clearly the mere creature of law; and yet it would not be pretended, for a moment, that the Legislature could ever diminish it during the time for which the judge shall have been elected. The two cases stand upon a perfect parity of reason, and they are both alike entirely beyond legislative control for the term, prescribed by the constitution. I conclude, therefore, from all the provisions of the constitution, when taken and construed together, that when the Legislature arranged the seventh circuit, and designated' the comities which composed it, and filled it by the election of the defendant, their power over it ceased: during his constitutional term. But here I am met with an argument based upon necessity and public policy. It is contended that, unless the Legislature should be permitted to add to or diminish a circuit, new counties must necessarily be left without courts, and that such a state of things would be productive of great inconvenience and much injustice to the public. To this I respond, that, if such should be tbe result, tins court could not, with any degree of propriety, be held responsible for it. The people of the State, in the rightful exercise of their sovereign powers, ordained and established the constitution; and the only duty devolved upon this court is to expound and interpret it. But I imagine that the evil anticipated would not necessarily exist, as the Legislature would have the undoubted right to designate, in advance, the circuit to which a new county or counties should be attached upon the happening of a vacancy, or upon the expiration of a constitutional term of the incumbent. The defendant rests his defence also upon another and distinct ground, and that is, that, although the seventh circuit shall be considered as abolished, yet the Legislature did not intend to oust him, but expressly provided for the event, and transfered him to the fourth circuit. True it is that the act clearly evinces the intention to continue him in office, in case that he should not be ousted by the operation of the amendment by which the power of election was transferred fr3m the Legislature to the people. However, with their intention I conceive this court has but little to do. The question before us is not one of legislative intention, but of constitutional power. It is obvious, from the express words of the act, that the Legislature did not intend to deprive him of a circuit judgship, although the one for which he had been elected should have been abolished; yet, had such been the legal effect of their acts, the transfer would have been without constitutional sanction, and consequently he could not have enjoyed the fruits of their kindness. If the seventh circuit was actually abolished, and the fourth erected out of the whole, or even a part, of it, the Legislature most clearly possessed no power to fill the latter by a mere transfer, but would have been confined to the constitutional mode of election. If they could transfer the judge of the seventh to the fourth circuit, they could also transfer him to the first or to any other within the limits of the State. This they most unquestionably could not do. I will suppose, for the sake of illustration, that, instead of re-organizing the circuits throughout the State, and reducing the number from eight to six, they had merely reversed the order of their number, can it be possible that any one would insist that they could have driven the judge of the eighth circuit out of the one for which he was elected, and have compelled him either to resign or take up his residence in the first? I consider the proposition too monstrous to entertain for a moment. The language of the constitution is clear and imperative that he shall reside and be a conservator of the peace within the circuit for which he shall have been elected during his continuance in office. It is not the number that constitutes the circuit, but the counties of which it is composed.- The number is used purely and solely to distinguish the one from the other, and consequently a mere change of name or number cannot affect the integrity or identity of the circuit. I am, therefore, of opinion that, although the defendant is acting nominally as the judge of the fourth, he is in reality acting as the judge of the seventh circuit, which he is, of right, authorized to do; and tha£ consequently he is not guilty of usurpation of office, and ought to be discharged. Scott, J. In this case I shall treat as closed the constitutional question settled by a majority of this court in the case of The State vs. William C. Scott. Not that my views, adverse to the correctness of that decision, have, in any degree, changed: on the contrary, my convictions remain clear that the question was erroneously decided; but because I entertain the opinion that, unless a decision of this tribunal, upon a constitutional question, is likely to be revolutionary in its effects, or to inflict some serious wound upon the liberty or the safety of the citizen, the public interest will be better subserved by yielding to its authority, and thus promoting that certainty of the organic law which alone can be the mother of public confidence and repose, than to wage single-handed a war of argument and opinion that can only beget a distrust of judicial stability, which will not fail to be prolific of litigation, and may be sometimes even still more mischievous in discouraging public measures of the highest import. Bat, while this will be my coarse on the present occasion, seeing nothing in the decision of the question referred to indicative, in my judgment, of the serious consequences alluded to, I will endeavor, in my opposition to decisions subversive of public or individual liberty, or of personal security, which may tend to destroy the great land marks of the constitution, should any such ever be made, to be at all times unyielding. In this position, taken after much deliberation, I am fully sustained by the views of an eminent judge, the Hon. Briscoe G. Baldwin, of Virginia, one of the judges of the supreme court of appeals of that State, whose purity of life, accuracy and great learning in the profession, self-possession and soundness of judgment, entitle his opinions to profound respect. He says “it is difficult to conceive any thing more mischievous than fluctuations and vibrations of the highest judicial tribunal upon the organic law of the State, for the tendency is to shake the foundations of society and throw it into confusion and anarchy. A decision of a supreme court, on such a question, ought not to be departed from, however unsatisfactory to succeeding, or even the same judges, without the gravest, most cogent and highest considerations. There doubtless may be cases in which such a decision ought to be repudiated, as, for example, where the effect is likely to be revolutionary, or where it inflicts a serious wound upon the liberty or safety of the citizen. In such emergencies it is the duty of every sentinel upon the ramparts of the constitution to sound the alarm and defend the citadel, though others may have proved faithless or recreant. But, if the principle asserted, however erroneous, be not vitally dangerous or mischievous, it is far better to bow to the constituted authority, and leave the redress to the people, or those whom they have appointed to change or modify the organic law.” And, having disposed of this question, I have but to announce, in the briefest possible terms, that, although in the views of the chief justice, presented in his opinion just read, I have not been able to concur, entertaining, as I do, the opinion that consistently with the genius of our government, as I understand it, no public officer can rightfully claim any proprietary interest, or private property, as against the public, in any office, and that, under our constitution, the unrestricted powers allowed to the Legislature, in reference to the circuits, necessarily include the power to abolish any of them at their pleasure, and thereby dispense -with the office of circuit judge, evolved from the constitution in its creation, whenever, in their discretion, the exigencies of the public interest might require the abolition of any circuit; nevertheless, I fully concur with him on the main question, basing my concurrence upon the ground that the act of the Legislature, approved the 29th December, 1848, entitled “ An act to divide the State, into judicial circuits,” &c., (Pamphlet Acts, p. 49,) did not abolish the circuit for which Judge Floyd was elected, and that consequently his office is still in legal existence. It is manifest, from the most cursory glance at the act in question, that it was not the intention of the Legislature to dispense with Judge Floyd’s official services, and these could be retained only by preserving his circuit; which alone, in my opinion, sustains the legal existence of his office; and consequently, if the legal effect of the act was to destroy his circuit, the Legislature did what they did not design to do. It is true that the numerical designation of the circuit, which embraces his residence, has been changed from the seventh to the fourth; but this is a matter of exceedingly slight import, when it is remembered that the State is now divided into but six circuits instead of eight, and that numerical designation is but form and not substance, and at most but one of various means of identity. All must admit, whatever may be their views of the constitutional powers of the Legislature to abolish circuits, that it was designed by this act to abolish but two of the eight, and to divide out the whole of the counties among the remaining six. The act, then, should be construed, if practicable, so as to give effect to this intention. Had this act provided, in express terms, 1st. That the fourth and eighth circuits should be abolished: 2d. That the seventh circuit should be hereafter designated as the fourth circuit: and 3d. Had parceled out all the counties in the State among the six remaining circuits, no one would have doubted but that the seventh circuit actually remained, although its numerical designation had been changed. And, in my opinion, this is precisely the legal effect of the act that has been passed; and to give it any other interpretation will pervert the manifest intention of the Legislature. Why is it to be inferred that the fourth and eighth circuits, as heretofore designated, have been abolished ? As to the eighth, the counties of which it was constituted have been divided to two adjoining circuits severally retaining their former numerical designation; and as to the fourth, while some of the counties, of which it was constituted, have been added to a circuit whose numerical designation has not been changed, the others have been added to a circuit whose judge is expressly recognized by the act, whereby a circuit is necessarily pre-sup-posed on the presumption of law that, in this, the Legislature acted within a constitutional power they possessed; forasmuch as if a circuit be not pre-supposed, the recognition would be nugatory. And the act also recognizing three other judges in connexion with their respective circuits, neither of whose numerical designations has been changed, the inference is inevitable that the fourth and eighth were abolished, as each one of the remaining six is by the, act recognized and identified. It is, therefore that, placing the construction indicated upon the act in question, I hesitate not to declare it as my opinion that Judge Floyd is the rightful judge of the circuit now numerically designated as the fourth, being identically the same circuit in contemplation of law that was at the time of his election numerically designated as the seventh circuit; and consequently I concur with the chief justice that he is not guilty of usurpation, and ought to go hence, and recover his costs.